Speer v. The Greencastle and Crawfordsville Gravel Road Company.

———————◆———————

No. 619.

SPEER v. THE GREENCASTLE AND CRAWFORDSVILLE GRAVEL ROAD COMPANY.

SPECIAL VERDICT.—*Province of the Jury in.—When Plaintiff Entitled to Judgment.—Conclusions of Law.*—It is the province of the jury in rendering a special verdict to find the facts only, leaving judgment thereon to the court; and all conclusions of law, if any, stated in such special verdict must be eliminated in considering the ruling of the court. Unless the special verdict states all the facts essential to a recovery by the plaintiff, the defendant will be entitled to a judgment thereon.

SAME.—For the insufficiency of the facts, as shown by the special verdict, to entitle the plaintiff to recover, see opinion.

GRAVEL ROAD.—*Width of.—Uniformity of Width.—Company Operating Under General Law.*—A turnpike company operating under the general law relating to such corporations need not construct or maintain its road of a greater width than eight and one-half feet, and the road need not be of uniform width throughout its course.

From the Montgomery Circuit Court.

*P. W. Bartholomew* and *C. E. Averill*, for appellant.
*M. A. Moore* and *G. C. Moore*, for appellee.

BLACK, J.—The appellee was sued by the appellant to recover damages for an injury to his person.

A special verdict was returned. Each party moved for judgment upon the verdict. The appellant's motion was overruled, and the appellee's motion was sustained. These rulings are assigned as errors.

The jury found, in substance, that the appellee, on the 12th of January, 1890, was a corporation owning and man-

aging a gravel road in Putnam county, in this State, extending from the city of Greencastle northward to the town of Raccoon; that for many years prior to that date, and continuously since it so owned and managed said road, which was a toll road, the appellee kept and maintained toll-gates thereon, and exacted and collected tolls from persons travelling on said road; that at said date there was on said road a bridge, constructed and maintained by the appellee as a part of its road for the use of travellers on said road, and persons travelling on said road were compelled to cross said bridge in going to points beyond it; that it spanned a natural depression, through which the surface water of the adjacent country found an outlet; that said bridge was four feet and eleven inches above the bottom of the bed of said depression; that the approach to said bridge from the south was an earth embankment, constructed and maintained by the appellee as a part of said road; that at a point fifteen feet south of the south end of said bridge said approach was, at said date, fifteen feet wide on the surface of the roadway, and from that point the width of the approach gradually narrowed on the west side until it was but eleven feet wide at its junction with the south end of the bridge; that this approach was elevated three feet above the surface of the adjacent land, and sloped gradually down to such surface, except that at a point within two or three feet immediately south of the bridge there was a washout; that the bridge was floored with planks, and was fourteen feet and five inches in width and twelve feet in length, and was constructed and maintained by the appellee without any barriers, rails, guards or other structures to prevent travellers from getting off at either side; that at said date there were no barriers, rails, guards, or other structures at the sides of the approaches to said bridge, nor had the appellee ever constructed or maintained any barriers, rails, guards, or other structures to prevent travellers from getting off said approaches; that in the condition in which the appellee was

keeping and maintaining said bridge and the approaches thereto, at said date, they were insufficient to protect persons travelling thereon in the night-time; that a prudent regard for the safety of those engaged in travelling upon the appellee's road, at the place where said bridge and approaches were located, required that the same should have been maintained to a surface width equal to the width of the bridge; that at said date, at or near 8 o'clock P. M., the appellant was travelling over said road, going north; that he was riding with Barton S. Grider and in his vehicle; that said Grider was driving; that the appellant had no control of the horse or vehicle, and had never passed over the road more than twice or three times before; that said Grider was going to his house, taking the appellant with him; that their way was over the appellee's road and over said bridge and the approaches thereto; that the night was very dark, and there was at the time a severe storm of rain and wind; that the night was too dark to see either the bridge or its approaches; that as they came to the bridge, Grider was sitting on the right side of the vehicle, which was a covered buggy, and appellant was sitting on the left side; that Grider was carrying a lantern in his right hand, and was driving the horse and holding the lines with his left; " that the horse passed to the west of the bridge, near to the west side of the approach; that the left wheel of the buggy ran off the same, or off the approach thereto, and violently threw the plaintiff out of the buggy and against a post that was set in the ground near the end of the bridge, or against some other hard substance, and from thence the plaintiff was, by the violence of the fall, thrown into the stream of water which was then flowing under the bridge; that said result was caused wholly by reason of the narrowness of the approach at the point where it joined the bridge, and by reason of the absence of guard rails or barriers to protect travellers from missing the bridge at that point, and was not due to any want of care on the part of the plaintiff."

The injuries suffered by the appellant are described, and it is stated, " that said injuries were sustained by plaintiff without fault on his part, and that at the time of the injury he was in the exercise of ordinary care "; that the approach to said bridge was too narrow at the point of junction with the bridge to be safe; that it had been so maintained by the appellee for a long time; that the appellee knew, and for a long time prior to appellant's injury had known, the condition of the bridge and its approaches; that appellant, at the time he was thrown from the buggy, did not know that he was near a bridge, or that there was a bridge at or near the place where he then was.

The expenses incurred by the appellant on account of his injury are stated, and his damages are assessed at $350.

It is the province of the jury, in rendering a special verdict, to find the facts only, leaving judgment thereon to the court.

All conclusions of law stated in the verdict before us must be eliminated in considering the ruling of the court; and unless the verdict states all the facts essential to a recovery by the appellant, upon whom rested the burden of the issue, the action of the court must be upheld.   *Pittsburgh, etc., R. R. Co.* v. *Spencer,* 98 Ind. 186; *Conner* v. *Citizens' St. R. W. Co.,* 105 Ind. 62; *Indiana, etc., R. W. Co.* v. *Barnhart,* 115 Ind. 399.

A turnpike company, operating under the general law relating to such corporations, need not construct or maintain its road of a greater width than eight and one-half feet; and the road need not be of uniform width throughout its course. *Neff* v. *Mooresville, etc., G. R. Co.,* 66 Ind. 279; *Wayne, etc., T. P. Co.* v. *Moore,* 82 Ind. 208.

There is nothing in the special verdict showing that the appellee was under obligation to construct or maintain its road of greater width than it was at the place of the accident.

The facts are not stated with clearness and certainty.

Speer *v.* The Greencastle and Crawfordsville Gravel Road Company.

It was the duty of the appellee to so construct and maintain that part of its road which constituted the approach to the bridge, that it would be reasonably safe for passage. The mere fact that the bridge was wider than the approach did not render the approach defective. It might contribute, perhaps, to make the bridge itself safer for a traveller keeping along the outer edge of the surface of the highway, in view of the want of railings upon the bridge, or culvert. The injury does not appear to have been caused by any defect in the bridge. It appears that neither the vehicle nor the horse went upon the bridge. The approach, upon its west side, sloped gradually from the surface of the road to the surface of the adjacent ground, the descent being three feet. For what distance from the bridge the approach was so elevated does not appear. The washout is not shown to have caused the injury, or to have contributed to it. The injury does not appear to have been the result of negligence in failing to provide reasonable protection from a dangerous declivity threatening the safety of travellers making proper use of the highway.

It is not shown that the appellee was responsible for the presence at the place where it was of the post or other hard substance against which the appellant fell, if that would make any difference under the circumstances.

The injury appears not to have been caused by any defect in the travelled part of the highway, or because of insufficient width of the road for the reasonable and proper use thereof; but it appears to have been occasioned by driving out of the travelled way, " to the west of the bridge." It is not shown where the horse left, or commenced to leave, the travelled way. It does not appear from the facts stated that the travellers could not have driven upon the bridge because of the narrowness of the approach. They did not drive upon the bridge, because of the fact that they drove to the west of it.

If the lantern which the appellant's fellow-traveller held in his right hand was lighted, it would seem that no precaution was taken to discover the way except upon that side, so that the horse was driven off the left side of the road, and the left wheel of the vehicle was caused to leave the travelled surface in a manner which the appellee could not reasonably be required to anticipate in the construction and maintenance of its road.

The judgment is affirmed.

